IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARLO MCDOWELL,

Plaintiff,

v.

VILLAGE OF LANSING and OFFICER
MICHAEL RODRIGUEZ,

Defendants.

No. 12 CV 05025
Judge Amy St. Eve

## DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, by their counsel, Gregory S. Mathews of ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C., and provide the following Local Rule 56.1 Statement of Material Facts in support of the individually named Defendants' Motion for Summary Judgment:

Filed in support of this statement are the following exhibits:

    A. Complaint
    B. Deposition of Plaintiff
    C. Deposition of Noelle Folden
    D. Deposition of Richard Birkenfeld
    E. Deposition of Michael E. Rodriguez
    F. People v. Morandi - Report of Proceedings, Folden Testimony

### Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C §§ 1331 and 1343, and venue is proper under 28 U.S.C. §1391(a).

### Parties

2. Plaintiff is Marlo McDowell;

3. Defendant Village of Lansing is a municipal corporation; and,

4. Defendant Officer Michael E. Rodriguez.

## Plaintiff

5. Bottoms Up is a restaurant and bar located in unincorporated Cook County outside the corporate limits of Lansing, Illinois. (Ex B., Pl. Dep., at, 9:10-10:1)

6. Closing time for Bottoms Up was 4:00 a.m. (Ex B., Pl. Dep., at, 18:10-12)

7. Plaintiff had been to Bottoms Up several times before the date of the incidents alleged in the Complaint. (Ex B., Pl. Dep., at, 18:22-24)

8. Plaintiff was familiar with bartenders and bouncers there. (Ex B., Pl. Dep., at 19:1-5)

9. Plaintiff met several people at Bottoms Up including Billie Wilborn, Richie Birkenfeld, Don Birkenfeld, and Noelle Folden. (Ex B., Pl. Dep., at, 22:3-24)

10. Plaintiff and his friends were at Bottoms Up until 4:00 a.m. and a fight occurred after closing time. (Ex B., Pl. Dep., at, 27:14-22)

11. Plaintiff was trying to leave when a fight ensued between Richard Birkenfeld and Plaintiff against four or five guys. (Ex B., Pl. Dep., at, 30:4-31:7)

12. The confrontation began outside the front door when Ramires confronted Richard and began to fight. (Ex B., Pl. Dep., at, 33:7-19)

13. Other guys jumped into the fight against Richard and Plaintiff tried to break it up and everybody started fighting. (Ex B., Pl. Dep., at, 38:13-39:5)

14. The fight moved out into the parking lot. (Ex B., Pl. Dep., at, 39:12-23)

15. Plaintiff told Noelle to call the police. (Ex B., Pl. Dep., at, 40:1-10)

16. Officer Rodriguez arrived at the scene first while the conflict was ongoing. (Ex B., Pl. Dep., at, 43:3-44:19)

17. The officer exited his vehicle and approached with his taser drawn and ordered everyone to the ground, and Plaintiff complied. (Ex B., Pl. Dep., at 45:9-19)

18. Plaintiff was kicked in the face by Morandi moments after he got to the ground. (Ex B., Pl. Dep., at 46:20-47:3)

19. As Plaintiff was on the ground he saw Rodriguez looking around, scanning the area. (Ex B., Pl. Dep., at 72:6-11)

## Noelle Folden

20. Noelle Folden is the mother of her and Plaintiff's daughter. (Ex C., Folden Dep., at, 7:2-10)

21. She met Marlo at Bottoms Up. (Ex C., Folden Dep., at, 13:6-14)

22. As Noelle and Plaintiff left the bar she heard loud voices behind her so she turned around and saw Richard and two other guys throwing punches at each other. (Ex C., Folden Dep., at, 31:9-32:19)

23. Plaintiff tried to help Richard and everyone was getting hit. (Ex C., Folden Dep., at, 33:6-15)

24. Noelle described the confrontation as a drunken brawl. (Ex C., Folden Dep., at, 45:4-10)

25. Noelle Called 911. (Ex C., Folden Dep., at, 34:20-23)

26. Noelle saw the police coming and yelled at everyone to stop the fight. (Ex C., Folden Dep., at, 36:6-10)

27. One officer got out and was telling everyone to get to the ground. (Ex C., Folden Dep., at, 37:7-16)

28. When the officer arrived there were five or six guys fighting. (Ex C., Folden Dep., at, 40:4-6)

29. Noelle believed the officer was pointing the taser in Plaintiff's direction but did not see the laser beam. (Ex C., Folden Dep., at, 38:4-11)

30. Folden thought the taser, was pointed at the guy standing above Marlo. (Ex. F., People v. Morandi, Report of Proceedings, at 54:3-7)

31. From the time the officer arrived until Plaintiff was kicked was less than a couple minutes, if that. (Ex C., Folden Dep., at, 39:14-20)

32. Noelle saw Morandi standing with his hands in the air as if giving up and walking toward Plaintiff. (Ex C., Folden Dep., at, 19:4-12)

33. Rodrigues told Morandi to get to the ground a couple times. (Ex C., Folden Dep., at, 38:6-18)

34. From the time Rodriguez told Morandi get on the ground until the kick was five to ten seconds. (Ex C., Folden Dep., at, 60:6-24)

35. Morandi was not gesturing in a threatening fashion. (Ex C., Folden Dep., at, 66:7-9)

36. The Cook County Sheriff's Department applied handcuffs to Plaintiff. (Ex C., Folden Dep., at, 40:17-22)

37. After Morandi kicked Plaintiff once he did nothing more to harm Plaintiff. (Ex C., Folden Dep., at, 53:10-14)

### Richard Birkenfeld

38. From the time Richard got to the ground until Plaintiff was kicked was a matter of seconds. (Ex D., R. Birkenfeld Dep., at, 36:14-17)

39. After the kick Morandi got on the ground. (Ex D., R. Birkenfeld Dep., at, 39:1-5)

40. Officer arrived, told everyone to get on the ground and the fight stopped. (Ex D., R. Birkenfeld Dep., at, 32:15-20)

41. As Morandi walked he did not yell threats, was not gesturing toward Plaintiff and did not do anything indicating he was going to punch or kick Plaintiff. (Ex D., R. Birkenfeld Dep., at, 63:7-14)

### Officer Michael E. Rodriguez

42. Officer Michael E. Rodriguez started working for Lansing Police Department in 2007.

43. Officer Rodriguez received a dispatch for a fight in progress at Borroms Up. (Ex E., Rodriguez Dep., at, 29:4-13)

44. Officer Rodriguez arrived at the scene and pulled up in front but did not see people at first. (Ex E., Rodriguez Dep., 35:22-24)

45. Officer Rodriguez's attention was drawn to the parking lot so he proceeded to the lot on the west side of the building. (Ex E., Rodriguez Dep., at, 36:1-37:17)

46. Officer Rodriguez first saw people fighting when he cleared the building. (Ex E., Rodriguez Dep., at, 41:5-10)

47. He saw four men engaged in a brawl. (Ex E., Rodriguez Dep., at, 39:7-16)

48. The scene was chaotic. (Ex E., Rodriguez Dep., at, 39:19-22, 40:19)

49. Rodriguez ordered them to the ground. (ExE., Rodriguez Dep., at, 41:14-16)

50. Rodriguez was the only officer on the scene. (Ex E., Rodriguez Dep., at, 43:6-9)

51. When the command to get to the ground was issued everyone complied but Morandi. (Ex E., Rodriguez Dep., at, 43:22-44:3)

52. Rodriguez had his taser out at low ready initially but then pointed at Morandi. (Ex E., Rodriguez Dep., at, 44:15-45:5)

53. The laser pointed was directed to Morandi's center mass. (Ex E., Rodriguez Dep., at 50:1-9)

54. Rodriguez commanded Morandi to get on the ground numerous times. (Ex E., Rodriguez Dep., at 49:19-24)

4

55. Rodriguez saw Morandi kick Plaintiff after about ten seconds of issuing commands. (Ex E., Rodriguez Dep., at 50:20-51:9)

56. Rodriguez again screamed at Morandi to get down and Morandi complied. (Ex E., Rodriguez Dep., at 54:3-6)

Respectfully submitted,

**THE VILLAGE OF LANSING
MICHAEL RODRIGUEZ**

By: *[signature]*

/s /Gregory S. Mathews
Attorney for Defendants

Gregory S. Mathews / gmathews@ancelglink.com / ARDC #3127427
ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Main: (312) 782-7606
Direct: (312) 604-9129

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLO MCDOWELL, | |
| Plaintiff, | |
| v. | No. 12 CV 05025<br>Judge Amy St. Eve |
| VILLAGE OF LANSING and OFFICER MICHAEL RODRIGUEZ, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Violet G. Mendiola, a non-attorney, on oath, certify that I served a copy of **Defendants' Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment** by mailing a copy of the same to:

> Basileios J. Foutris
> Foutris Law Office, Ltd.
> 53 W. Jackson, Suite 252
> Chicago, IL 60604

and depositing the same in the U.S. Mail at 140 South Dearborn Street, Chicago, Illinois 60603, with proper postage prepaid, before 5:00 p.m. on July 29, 2013.

[X] I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Certificate of Service is true and correct

*/s/ Violet G. Mendiola*