**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARLO MCDOWELL, )
)
Plaintiff, )
)
v. ) Case No. 12 C 5025
)
VILLAGE OF LANSING, ILLINOIS, and )
OFFICER MICHAEL RODRIGUEZ, )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 31, 2012, Plaintiff Marlo McDowell filed the present Amended Complaint against Defendants Village of Lansing, Illinois ("Lansing") and Lansing Police Officer Michael Rodriguez ("Officer Rodriguez") alleging a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983. McDowell also brings a "wilful and wanton" negligence claim pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' summary judgment motion and dismisses this lawsuit in its entirety.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local

Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

On June 25, 2011, McDowell went to the Bottoms Up restaurant and bar in unincorporated Cook County outside of Lansing at about 3:30 a.m., after he had finished his shift as a bar manager at O'Keefe's. (R. 34, Defs.' Rule 56.1 Stmt. Facts ¶ 5, R. 36, Pl.'s Rule 56.1 Add'l Stmt. Facts ¶ 1.) When he got to Bottoms Up, McDowell sat with his friends Richie Birkenfeld, Don Birkenfeld, and Noelle Folden. (Defs.' Stmt. Facts ¶ 9, Pl.'s Stmt. Facts ¶ 3.) McDowell and his friends were at Bottoms Up until 4:00 a.m., which was closing time. (Defs.' Stmt. Facts ¶ 10.) At that time, a fight occurred between Richie Birkenfeld and McDowell against four or five other people, including Steven Morandi and Ricky Ramirez, an off-duty police officer. (Defs.' Stmt. Facts ¶¶ 10, 11, 28, Pl.'s Stmt. Facts ¶¶ 4-7.) The fight eventually moved to the parking lot of Bottoms Up. (Defs.' Stmt. Facts ¶ 14.) At some point, McDowell told Folden to call the police and she called 911. (*Id*. ¶¶ 15, 25; Pl.'s Stmt. Facts ¶ 15.)

After being dispatched to Bottoms Up, Officer Rodriguez arrived at the scene while the fight was ongoing. (Defs.' Stmt. Facts ¶¶ 16, 43, 45; Pl.'s Stmt. Facts ¶¶ 16, 19.) Prior to arriving at the scene, dispatch informed Officer Rodriguez that a fight was in progress and that one of the individuals was an off-duty police officer. (Pl.'s Stmt. Facts ¶ 17.) Upon arriving, Officer Rodriguez exited his vehicle, approached the fight with his Taser drawn, and ordered everyone to the ground, to which everyone complied but Morandi. (Defs.' Stmt. Facts ¶¶ 17, 49, 51, Pl.'s Stmt. Facts ¶¶ 22, 23.) At that time, Officer Rodriguez was the only law enforcement officer at the scene. (*Id.* ¶ 50.) Moments after McDowell got to the ground — no more than one or two minutes — Morandi kicked McDowell in the face. (Defs.' Stmt. Facts ¶ 18, Pl.'s Stmt. Facts ¶ 33.) After he kicked McDowell, Morandi then got on the ground. (Defs.' Stmt. Facts ¶

39.) Thereafter, the Cook County Sheriff's Police Department arrived and arrested the offenders, took statements, and filled out the police reports.[1] (Pl.'s Stmt. Facts ¶ 36; Defs.' Ex. B, McDowell Dep., at 9, 48.)

An ambulance then took McDowell to the Community Hospital in Munster, Indiana, where he underwent surgery on his jaw because it was fractured. (Pl.'s Stmt. Facts ¶ 39.) The Cook County State's Attorney prosecuted Morandi in November 2011. (Ex. B, McDowell Dep., at 59, Ex. F, 11/21/11 transcript).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet

[1] Because Bottoms Up is in unincorporated Lansing, which is in Cook County, the Cook County Sheriff's Department participated in the arrests. (Ex. B, McDowell Dep., at 9-10.)

this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago*, 702 F.3d 916, 925 (7th Cir. 2012).

## ANALYSIS

### I. Substantive Due Process

McDowell maintains that his substantive due process claim is based on *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). As the *DeShaney* Court explained, the purpose of the due process clause of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 195. Accordingly, "[t]here is no federal constitutional right to be protected by the government against private violence in which the government is not complicit." *Sandage v. Board of Comm'rs of Vanderburgh County*, 548 F.3d 595, 596 (7th Cir. 2008). Specifically, "while there's no federal constitutional duty to protect or to rescue from a peril that the government did not create, there is a duty not to harm." *Id.* at 597 (internal parenthesis omitted). Indeed, "state actors who needlessly create risks of harm violate the due process clause by depriving persons of life, liberty, or property without process." *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012).[2] To establish a substantive due process claim, McDowell must present evidence showing that: (1) Officer Rodriguez created or increased a danger that McDowell faced; (2) Officer Rodriguez's failure to protect McDowell from the danger was the

---

[2] In *Paine*, instead of categorizing the *DeShaney* exceptions as the "special relationship exception" and "state-created danger exception," the Seventh Circuit concluded that "[s]tate actors who needlessly create risks of harm violate the due process clause by depriving persons of life, liberty, or property without process." *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012); *see also Sandage v. Board of Comm'rs of Vanderburgh County*, 548 F.3d 595, 598 (7th Cir. 2008) ("in both classes of case the victim is safe before the state intervenes and unsafe afterward.").

proximate cause of his injuries; and (3) Officer Rodriguez's failure to protect McDowell "shocks the conscience." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011). The Court turns to the third substantive due process requirement because it is dispositive.

"The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed 'arbitrary in the constitutional sense.'" *Id.* at 654 (citation omitted); *see also Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007) (substantive due process "affords protection of the individual against arbitrary action of government"). "Only 'the most egregious official conduct' will satisfy this stringent inquiry," such that "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson*, 653 F.3d at 654 (citation omitted). Recently, a Seventh Circuit panel disapproved of the term "shocks the conscience" inquiring "[s]houldn't it be enough to say that it violates the due process clause for a government employee acting within the scope of his employment to commit a reckless act that by gratuitously endangering a person results in an injury to that person?" *Slade v. Board of Sch. Dirs. of City of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012). Although this inquiry changes the focus of the substantive due process analysis to whether a state actor's conduct was reckless, it is still unsettled whether the standard for criminal or civil recklessness applies to substantive due process claims. *See id.* at 1030 ("it's an unsettled question whether knowledge of the risk is required or it is enough that the risk is obvious."). To clarify, the criminal meaning of recklessness is "knowledge of a serious risk to another person, coupled with failure to avert the risk though it could easily have been averted." *Id.* at 1033. Whereas, under the civil meaning of recklessness, "it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the

defendant." *Id.* As the Supreme Court explains, "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Viewing the facts and all reasonable inferences in McDowell's favor — as the Court is required to do at this procedural posture — McDowell has failed to present sufficient evidence raising a genuine factual dispute that Officer Rodriguez's conduct was reckless and gratuitously endangered him. *See Slade*, 702 F.3d at 1033. It is undisputed that when Officer Rodriguez arrived at the scene of the fight, it was a chaotic, drunken brawl, involving at least four to five individuals. (Defs.' Stmt. Facts ¶¶ 24, 47, 48; Pl.'s Stmt. Facts ¶¶ 5, 19.) Prior to Morandi kicking McDowell in the face, Officer Rodriguez was attempting to break up a bar fight that had relocated to the bar's parking lot. Not only was Officer Rodriguez the only police officer at the scene, but when he arrived, McDowell was running in circles being chased by the other men. (Pl.'s Stmt. Facts ¶ 18.) After Officer Rodriguez ordered everyone to the ground, McDowell was detained for a few moments before Morandi kicked him in the face. Although the record indicates that Officer Rodriguez was pointing his Taser at McDowell and that Richie Birkenfeld testified that it looked like Morandi was about to do something before he kicked McDowell, these facts alone do not amount to reckless, unjustifiable behavior on Officer Rodriguez's part, especially because it took Morandi no more than fifteen seconds to make his way to McDowell before kicking him. (Pl.'s Stmt. Facts ¶¶ 21, 24, 32.) In other words, under the circumstances,

Officer Rodriguez's conduct in attempting to restore order during a brawl outside of a bar at 4 a.m. was not unjustified or unwarranted nor was it reckless when he did not stop Morandi from kicking McDowell. Instead, Officer Rodriguez was forced to make swift decisions in a chaotic situation and his failure to quickly determine that Morandi was going to kick McDowell does not amount to recklessly endangering McDowell.

United States Supreme Court precedent supports this conclusion. The Supreme Court recognizes that "the police on an occasion calling for fast action have obligations that tend to tug against each other," namely, "[t]heir duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs." *County of Sacramento v. Lewis*, 523 U.S. 833, 853, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In addition, "[t]hey are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (citation omitted). Indeed, the Seventh Circuit has repeatedly "recognize[d] that working in law enforcement is a demanding profession, often requiring officers to make split-second decisions, which affect the safety of the public and the officers." *Gentry v. Sevier,* 597 F.3d 838, 846 (7th Cir. 2010).

Also, in contrast to Officer Rodriguez's conduct, the Seventh Circuit has explained when police officers have violated an individual's substantive due process rights. *See Paine*, 678 F.3d at 510. Specifically, the *Paine* decision highlights *White v. Rochford,* 592 F.2d 381 (7th Cir. 1979), in which:

> Police stopped a car and arrested the driver for drag racing. They took the driver to the police station and left the car, and its three remaining occupants, at the side of the Chicago Skyway, a busy limited-access highway. All three occupants were minors, and two of the three were children. Drag racing is dangerous, but the

> situation of the children deteriorated when the police took away the driver and left them stranded. When it became too cold for them to stay in the car, they got out, crossed the eight-lane expressway, and went hunting for a public call box. Eventually they phoned home and were picked up. They escaped being hit by a car or attacked and robbed, but one of the three, a five-year-old asthmatic, spent a week in a hospital as a result of the ordeal, and all three suffered fright and other mental distress.

*Paine*, 678 F.3d at 510. Likewise, in *Paine*, the Seventh Circuit concluded — in the context of a qualified immunity interlocutory appeal — it was clearly established that "state actors who, without justification, increase a person's risk of harm violate the Constitution," *see id.*, in the context of a woman who police arrested then "released alone, at night, without any protection, money or a phone, into a high crime neighborhood that the officers knew to be a high crime neighborhood during a time when she was in a weakened mental state not capable of full mental functioning in order to protect herself." *Paine ex rel. Eilman v. Johnson*, 689 F.Supp.2d 1027, 1082 (N.D. Ill. 2010).

It is well-established that "the scope of substantive due process is very limited," *see Belcher*, 497 F.3d at 753, especially because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Here, McDowell's claim against Officer Rodriguez does not fall under this limited scope because Officer Rodriguez's conduct was not reckless and did not gratuitously endangered McDowell. *See Slade*, 702 F.3d at 1033. Put differently, Officer Rodriguez's conduct was not so egregious that it was "the type of conscience-shocking behavior that results in a constitutional violation." *Jackson*, 653 F.3d at 654. The Court therefore grants Defendants' summary judgment motion as to McDowell's

substantive due process claim.[3]

## II. Willful and Wanton State Law Claim

Next, Defendants move for summary judgment as to McDowell's willful and wanton state law claim. Under Illinois law, "[t]here is no separate and independent tort of willful and wanton conduct." *Krywin v. Chicago Transit Auth.*, 238 Ill.2d 215, 235, 345 Ill.Dec. 1, 938 N.E.2d 440 (Ill. 2010). Instead, it is considered an aggravated form of negligence. *See id*. To survive summary judgment, not only must McDowell establish the basic elements of a negligence claim, namely, that Officer Rodriguez owed him a duty, Officer Rodriguez breached that duty, and the breach was a proximate cause of his injury, *see id.*, McDowell must also show that Officer Rodriguez had a deliberate intent to harm him or a conscious disregard for his safety. *See Vilardo v. Barrington Cmty. Sch. Dist. 220,* 406 Ill.App.3d 713, 724, 346 Ill.Dec. 699, 941 N.E.2d 257, 267 (2d Dist. 2010); *see also Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010).

The Court turns to whether McDowell has established that Officer Rodriguez had a deliberate intent to harm him or a conscious disregard for his safety because it is dispositive. *See Vilardo,* 406 Ill.App.3d at 724. First, McDowell explains that his willful and wanton claim — at its core — is the same as his federal constitutional claim. As discussed above, however, McDowell did not present evidence creating a factual dispute for trial that Officer Rodriguez's conduct was reckless and that Officer Rodriguez gratuitously endangered McDowell. Likewise,

---

[3] The Court need not address Officer Rodriguez's qualified immunity defense because McDowell has failed to establish a deprivation of a constitutional right in the first instance. *See Mann v. Vogel*, 707 F.3d 872, 883 (7th Cir. 2013).

construing the evidence and all reasonable inferences in his favor, McDowell has not set forth evidence creating a factual dispute that Officer Rodriguez had a deliberate intent to harm him. In fact, McDowell does not point to specific facts that Officer Rodriguez had any such intent.

Instead, McDowell argues that Officer Rodriguez's conduct exhibited an utter indifference or conscious disregard for his safety, also known as unintentional or nonintentional willful and wanton conduct. *See Pfister v. Shusta,* 167 Ill.2d 417, 421-22, 657 N.E.2d 1013, 212 Ill.Dec. 668 (Ill. 1995); *Bezanis v. Fox Waterway Agency*, 967 N.E.2d 393, 404, 359 Ill.Dec. 663, 674 (2d Dist. 2012). "A nonintentional willful or wanton act is committed under circumstances showing a reckless disregard for the safety of others such as, for example, when a party (a) fails, after knowledge of an impending danger, to exercise ordinary care to prevent the danger or (b) fails to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Oelze v. Score Sports Venture, LLC,* 401 Ill.App.3d 110, 122, 339 Ill.Dec. 596, 927 N.E.2d 137 (1st Dist. 2010). As discussed, McDowell did not present evidence creating a dispute for trial that Officer Rodriguez's conduct was reckless. In addition, although Richie Birkenfeld testified that it looked like Morandi was about to do something before he kicked McDowell, there is no evidence in the record that Officer Rodriguez consciously disregarded the safety of McDowell or the others at the scene of the fight. Instead, evidence reveals that once Officer Rodriguez arrived at Bottoms Up, he attempted to control a chaotic fight involving four to five people. At that time, he made quick decisions when he ordered everyone to the ground and pointed his Taser to control the situation. This evidence does not show that Officer Rodriguez's actions posed a high probability of serious harm or an unreasonable risk of serious harm. *See Choice v. YMCA of McHenry County,* 976 N.E.2d 584,

606, 364 Ill.Dec. 306, 328 (1st Dist. 2012). At best, McDowell has presented evidence that Officer Rodriguez's conduct exhibited momentary inattentiveness when he was attempting to control a chaotic situation, at which time Morandi kicked McDowell. *See Oelze,* 401 Ill.App.3d at 122 ("More than mere inadvertence or momentary inattentiveness which may constitute ordinary negligence is necessary for an act to be classified as wilful and wanton misconduct.") (citation omitted). Accordingly, McDowell has failed to present evidence showing that there is a genuine issue for trial regarding his willful and wanton allegations.

Finally, in his response brief, McDowell asserts that the special duty exception to the public duty rule applies under the circumstances.[4] *See Leone v. City of Chicago,* 156 Ill.2d 33, 37, 619 N.E.2d 119, 121, 188 Ill.Dec. 755, 757 (Ill. 1993) (the special duty exception "has been recognized where the municipality owes the injured party a special duty that is different from its duty to the general public"). To clarify, the special duty exception applies "in those narrow instances when the governmental entity assumed a special relationship to an individual 'so as to elevate that person's status to something more than just being a member of the public.'" *Green v. Chicago Bd. of Educ.,* 407 Ill.App.3d 721, 727, 348 Ill.Dec. 506, 944 N.E.2d 459 (1st Dist. 2011) (citations omitted). Nevertheless, "the special duty doctrine cannot, and was not intended to, contravene the immunities provided to governmental entities under the Tort Immunity Act." *Zimmerman v. Village of Skokie*, 183 Ill.2d 30, 36, 231 Ill.Dec. 914, 697 N.E.2d 699 (Ill. 1998); *see also Harinek v. 161 North Clark St. Ltd. P'ship,* 181 Ill.2d 335, 230 Ill.Dec. 11, 692 N.E.2d 1177 (Ill. 1998) ("the special duty doctrine may not operate to impose liability upon a public

---

[4] It is well-established that a plaintiff cannot amend his complaint through arguments made in his summary judgment brief. *See Anderson v. Donahoe,* 699 F.3d 989, 998 (7th Cir. 2012).

entity after a court has found that entity immune from liability under the Tort Immunity Act"). Simply put, the special duty exception does not trump the Tort Immunity Act. Because McDowell has failed to establish that Officer Rodriguez's conduct was willful and wanton, Officer Rodriguez is immune from liability pursuant to the Tort Immunity Act, 745 ILCS 10/2-202. *See Harris v. Thompson*, 976 N.E.2d 999, 1011, 364 Ill.Dec. 436, 448 (Ill. 2012) (Illinois Tort Immunity Act's definition of willful and wanton "is entirely consistent with this court's long-standing case law."). Therefore, the Court grants Defendants' summary judgment motion as to McDowell's willful and wanton negligence claim.

**CONCLUSION**

For these reasons, the Court grants Defendants' summary judgment motion and dismisses this lawsuit in its entirety.

**Dated:** October 2, 2013

**ENTERED**

______________________________
**AMY J. ST. EVE**
**United States District Court Judge**